Emott, J.
1. The learned judge before whom this cause was tried, found as a fact, upon what I consider sufficient evidence, that the judgment in favor of Pinckney against Fleet was paid, before the sale by the sheriff of Queens county, in 1838. This renders it unL necessary to consider whether the decree in the suit in the court of chancery was conclusive against the right of the plaintiff to allege a title derived trom this judgment, against the mortgage made to the loan commissioners. It will be observed that the judgment of Pinckney was subsequent to the trust deed, and, that *53 being established, the importance of the question whether the sheriff’s sale was made upon the two judgments or only upon one, is in its effect upon the mortgage given to the loan commissioners.
2. The Pinckney judgment being out of the way, the loan office mortgage is prior in time to the plaintiff1’s title, and the inquiry then becomes necessary, to what extent or amount, and in favor of whom it can be enforced, and upon what part or share of the land in question it is a lien. The money which the commissioners received on account of this mortgage did not proceed directly or indirectly from the mortgagor. It was not intended to be and was not a payment upon the mortgage, but it was paid to these officers for and in order to a purchase of the mortgage or of some interest in it. The assignment which they undertook to make was wholly inéffectual and void, for want of authority on their part. The title and interest in the mortgage consequently remained in them, and the money belonged to Ayres, the person advancing it. It did hot operate as a payment or satisfaction of the mortgage, not having been paid or .received with any such design. If the mortgage remained intact, it was only equitable that the mortgagees should account to Ayres for what he had advanced, and inforce the security for his benefit pro tanto, and it was immaterial to. the mortgagor, or those claiming under him, to whom the money belonged or should go. The judgment in the present action exempts the share or interest which John K. Fleet had and conveyed in these lands from the lien of the mortgage, and in that particular the plaintiff cannot complain of the decision.
The third question in the case is, what are the rights and interests of the parties and cestuis que trust, under the trust deed? I agree with Judge Steokg- that the opinion of the assistant vice-chancellor on this point, and the decree entered under his di *54 rection, so far as it declares these rights, was erroneous. If that decree is not conclusive and final, I agree that the plaintiff has no ground of complaint with the judgment directed by Judge Strong. But I am strongly impressed with the conviction that this question was decided in the chancery suit, and must be treated as res adjudicaba between these parties:" The object of that suit was to stay the ejectment which had been brought on a title subsequent to the trust deed, to have that deed declared valid, and to have trustees appointed to execute the trust.
All these things were done. The deed was declared valid to a certain extent and void for all beyond it, and trustees were appointed who are to carry out and execute the trusts as declared. It seems to me that the construction of the trusts, and the indication of those which were valid and the contrary, were within the scope of the suit, and the decree cannot now be questioned. If this be so the present judgment should be modified.
My associates, however, do not concur in this view of this part of the case. They consider the suit in chancery as not involving necessarily the construction of the deed or the declaration of the trusts, and they agree with Judge Strong that the questions arising upon this part of the case are open and unadjudicated.
It is therefore the conclusion of the majority of the court that the judgment must be affirmed, with costs.
The plaintiff then appealed to the court of appeals. After appealing, he died, and Mary Woodgate and Thomas Forster, his executors, were substituted.
Dennis McMahon, for appellants.
William J. Cogswell, for respondents.
Earl, Commissioner.
The appellants claim that *55 the decree in the chancery suit before the vice-chancellor is conclusive as to the true construction of the trust deed, and the force and effect which it is to have. With considerable doubt and hesitation I have come to the conclusion that this claim is not well founded. There is so much confusion in the papers and evidence that it is quite difficult to determine how far the decree in that suit should estop the parties in this.
The main object of that suit, so far as concerned Woodgate, was to stay him in the prosecution of his ejectment suit; and it was sufficient for the complainants to show rights and equities that entitled them to the injunction prayed for. When the court found that the trust deed was so far valid as to give them such rights and equities, it was unnecessary to go farther. When the complainants established that the deed was properly executed and was in force, notwithstanding the renunciation and reconveyance of the trustees, and that the deed conveyed trusts so far valid as to entitle the trustees or cestuis que trust to the possession of the lands, they had established all that was necessary to entitle them to a decree against Woodgate. If the court gave a wrong reason for its judgment, or placed it upon unnecessary grounds, the parties would not be estopped as to such reasons and grounds in any other suit.' The bill did not pray for a construction of the deed, and that does not seem to have been a matter of controversy and discussion on the trial. All the grounds upon which Woodgate-defended that suit are stated in his points submitted to the vice-chancellor, as follows:
“1st. The trust deed was made without any consideration passing between the parties.
“ 2nd. That it was made by the grantor with, a fraudulent intent, he being indebted at the time, and to protect the property against creditors, and is therefore void
‘13rd. The trustees never accepted of the trust, which *56 was made without their knowledge or consent in any way ; and as contracting parties it must be with their assent.
“4th. The deed of the trustees is not to be met by the declarations of witnesses ; it is a solemn instrument under seal.
‘£ 5th. The • trust deed not having been legally executed and delivered in due form of law, and being made by the defendants fraudulently, and without the privity or consent of the trustees, who refused to accept it when it came to their knowledge, did not vest the fee in them, but the same remained in the grantor, and was subject to be sold under execution, &c.
“ 6th. The trustees had the power to reconvey by their deed, and did so, and the property was then in the original grantor, Abraham K. Fleet.
“7th. The defendant, Woodgate, purchased the property at sheriff’s sale, under an execution, &c., against Fleet, and received the sheriff’s deed, by which he became vested with the whole right, title, and interest of Fleet, and now claims to be entitled to the possession of the same.”
The questions raised by these points were necessarily involved in the litigation, and as to all these questions the parties were undoubtedly estopped by the decree in that suit. But the general construction of the trust deed, except so far as I have already indicated, was not necessarily involved in that litigation, and the decision or opinion of the vice-chancellor thereon should not estop the parties in this suit.
A judgment is conclusive upon the parties thereto only in respect to the grounds covered by it, and the law and facts necessary to uphold it; and, although a decree, in express terms, purports to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the *57 parties in reference thereto (People v. Johnson, 38 N. Y., 63).
The only claim made before us on the part of the appellants, either in the points or oral argument of their counsel, as to the construction of the trust deed, was that the decision of the vice-chancellor was conclusive. Upon the assumption that it was not conclusive, I do not understand that either party is dissatisfied with the construction given to the deed by the court below; and as there has been no discussion before us upon the question, I shall assume, without the careful examination I would otherwise give, that the construction is correct.
The only other question to be examined is the right of Woodgate under his sheriff’s deed as against the mortgage of the loan commissioners.
The sheriff’s deed purports to be based upon two judgments; one docketed May 25, 1837, in favor of Pinckney against Fleet, before the mortgage to the loan commissioners, and another in favor of Woodgate against Fleet, docketed October 21, 1837, after the said mortgage, and both after the trust deed. The court at special term found that prior to the sheriff’s sale, the Pinckney judgment and execution had been fully paid and satisfied, and hence that plaintiff’s title as to three-fifths of the real estate was subject to the loan commissioners’ mortgage. The payment of this judgment was a controverted question at the trial; and while there was some competent evidence tending to show the payment, it was by no means conclusive. As a portion of the evidence upon this subject, the court received and seemed to rely upon certain declarations of the deceased deputy sheriff who held the execution on that judgment, and who made the sale and gave the deed, tending to show payment of the execution before the sale. This evidence was properly objected to on the part of the defendant, Woodgate, and I do not perceive *58 upon what theory it was admissible. It was mere hearsay. The declarations were no part of any res gesta; and hence, if the deputy sheriff could in any sense be regarded as the agent of the owner of the judgment, they would not be competent evidence against him. They are not competent to contradict the recitals in the deed, and I know of no rule that makes them competent because the declarant is dead'.
It is no answer to this incompetent evidence to say ‘that Woodgate was precluded by the decision of the vice-chancellor from denying that this judgment was paid and satisfied. There was no allegation in the complaint or answer, in the action tried before him, as to the Pinckney judgment. Whether that judgment was paid or not was in no way litigated in that action, and in no way necessary to or involved, in its decision. Hence, upon principles above stated, the decree in that action furnishes no estoppel as to that judgment.
For the reception of this improper evidence the judgment must be reversed and a new trial granted, costs to abide the event.
Leonard, Commissioner.
The most material question in this case is to ascertain the estate (if any), vested in Abraham K. Fleet after his execution of the trust deed to Hackett and others, and at the time of or subsequent to the purchase by John H. Woodgate at the sheriff’s sale under the executions on the judgments against the said Abraham.
If the decree of March, 1843, before the vice-chancellor, must be regarded as res adjudícala, as to the quantum of estate acquired, the question is determined thereby.
The action in which that decree was entered, was brought by Mrs. Martha E. Fleet (the wife), and John K. Fleet and others, children of the said Abraham and Martha, and beneficiaries under the said trust deed, *59 against John H. Woodgate and others, to have the validity of the said trust declared; for the appointment of new trustees, and for an injunction restraining Mr. Woodgate from prosecuting an action of ejectment for the land in question, which he claimed under his title acquired at the sheriff’s sale. The title so acquired was the interest of Abraham K. Fleet.
If any of the trusts contained in the deed to the trustees were valid, no right of possession was acquired by the sheriff’s deed, and the trust deed constituted a bar to the action of ejectment. The complaint of Mrs. Fleet and her children against Mr. Woodgate and others is in evidence, but not the answer of Mr. Woodgate. We are, for want of the answer, without the evidence required to determine the precise issues made by the pleadings in that action. The evidence shows that the controversy turned, in part at least, upon the delivery and acceptance of the trust deed. The validity of the trust provisions were also material to the inquiry, and might have been set up against the title of the trustees. The best evidence we have on the subject, is the points made by the counsel of Mr. Woodgate at the hearing, and these do not indicate that any question was urged as to the validity of the trust provisions. The assistant vice-chancellor did, however, discuss in his opinion, and by the decree which he pronounced, declare the extent or quantity of the estate of the beneficiaries, and the validity of some of the trust provisions, and the invalidity of others, and where the fee finally vested; by which it appeared that no estate, present or future, was vested in Abraham K. Fleet, and the decree perpetually enjoined the prosecution of the action of ejectment.
Judge Stboxg-, before whom the present action was tried, has found, in effect, that the construction of the trust deed, as to the extent of the estates, or interests of the respective beneficiaries, was not in issue before *60 the vice-chancellor, and that in this respect he was limited to the determination of the question whether the provisions were valid so far as to maintain a valid title in the trustees. The judge omits to state the facts from which he draws his legal conclusion, but an examination of the evidence confirms its propriety. The points referred to are the plainest indication afforded us by the evidence. The beneficiaries were not in a condition to litigate the extent of their respective estates, inter sese. It was sufficient for them, if there was any valid trust. It was material for Mr. Woodgate to establish that the trust deed passed no estate, and he was at liberty to urge that the provisions of the trust were void in whole or in part, but there is no evidence that he did so. Judge Stkoxg- holds that the decree of 1843 was final in this respect to the extent only of its “existing efficacy, which required that the beneficiaries had equities which should be protected by an injunction against the operation of the legal estate of Mr. Wood-gate ; ” that the case was open for judgment as to the construction of the provisions of the trust and the extent or quantum of interest of the beneficiaries. The judgment appealed from declares that John K. Fleet took a vested estate at the age of twenty-one in one-fifth ; that the trust continued as to one other fifth during the joint lives of Martha E. Fleet and her said husband; that as to the remaining three-fifths, the reversion remained in Abraham K. Fleet, and vested in possession when John K. Fleet attained his majority, and passed by the sheriff’s deed to Mr. Woodgate, subject to the mortgage to the loan commissioners and to the right of dower of Mrs. Fleet. The invalidity of the trust as to three-fifths of the estate, appears to have been so declared on the ground that the power of alienation was suspended during some portion of the lives of persons not in being at the creation of the trust estate.
*61 In my opinion we should adopt this construction. It carries into effect the intention of the grantor as to the two-fifths of the estate, wherein the trust is held valid. The interest of John K. Fleet, to some extent, according to the effect of this judgment, vested at the creation of the estate. The portion which he would finally take was then unknown, the intention of the grantor having by the deed been declared to be that the “ property shall go to, and be divided amongst, the said Martha (his wife), John K. (his son), and all lawful children of the party of the first part (the grantor) which shall be living at the time the said John K. shall arrive at age, in equal proportions, share and share alike.”
When John K. became of age there were three other children living, born after the execution- of the trust deed, and the said Martha E. was also then living. Pursuing the intention of the grantor, as declared by his deed, John K. was then entitled to one-fifth of the estate in possession. The further provisions of the trust declared “that the shares of the children thereafter born shall be held in trust for them until the said children shall arrive at lawful maturity.” When the vice-chancellor’s decree was made, in 1843, John K. was yet an infant, and the extent or quantum of the estate that would finally belong to him when he became of age was unknown, for the reason that the number of children who would then be living was uncertain. If no other children were living when John K. became of age, he would take a moiety, and the trust would continue for the benefit of Mrs. Fleet, as to the other moiety, if she should be also then living, and no part of the estate would revert to Abraham Fleet. The vice-chancellor correctly held tiiat the trusts were void in favor of unborn children,- to continue till they respectively reached the age of twenty-one, but his views were- erroneous in respect to the persons who were en *62 titled to take by reason of the void provisions in favor of such children. The invalidity of the trust provision for unborn children did not increase the interest of John K. Fleet or of Mrs. Fleet, but to that extent the land would revert to the grantor.
The decision of the vice-chancellor is conclusive that the deed of Abraham Fleet conveyed the legal estate to the trustees. The supreme court were not, however, concluded from harmonizing the provisions of the judgment in this action with the intentions of the grantor as to the quantity of the estate granted to his wife or for her use, and to the son who was living at the creation of the trust, and that result has been effected.
Three-fifths of the estate reverted to the grantor when John K. Fleet attained his majority. Had not the rights of a judgment creditor intervened, the grantor could have so disposed of this reverted interest or proportion as to have carried into effect his original designs had he continued to be of the same mind. The sheriff’s deed, therefore, takes effect as to the three-fifths of "the estate which reverted to Abraham Fleet.
There is no question that the deed from John K. Fleet also conveyed his one-fifth interest to Mr. Wood-gate.
Some other questions of minor importance were urged by the appellants’ counsel, which I will now consider.
1. Mr. Ayres paid a sum of money to the loan commissioners, toward the purchase of the mortgage to them, and afterward, when one of the commissioners went out of office, his successor applied the amount as a payment on account, and the appellant now urges that this sum was properly so applied; and that it was erroneous to hold that the whole amount of the mortgage remained unsatisfied.
*63 The mortgage was never assigned, and the commissioners had no power to sell or assign it. It was a mistake to enter the money as a payment. That was not the purpose for which Mr. Ayres paid the money. He was in no way liable for the debt; and it was a mistake of the commissioners to receive it as upon an agreement of purchase which they had no authority to enter into. Heither Abraham Fleet nor Mr. Woodgate are entitled to any benefit from the money, nor was it paid on behalf of them, or either of them. The decree properly provides, on this state of facts, that the loan commissioners shall collect the whole sum due on the mortgage, and repay to Mr. Ayres the sum so received from him.
2. It is further urged by the appellant that the evidence of Mr. Cogswell and of Mr. Warner, as to what the deputy sheriff stated, in respect to the payment of the Pinckney execution, was inadmissible, and has had some influence on the judge below, affecting his finding that the judgment on which the execution issued was paid before the sheriff’s sale to Mr. Woodgate.
This evidence was improperly admitted. The deputy sheriff was dead at. the time of the trial, but that did not authorize his declarations to be given in evidence. The declarations of a former owner of land, since deceased, against his own interest, have been admitted as evidence against his successors in estate, but that is not the relation here. I am not aware of any ground upon which this evidence can be legally sustained. It did not prove payment any more than the recitals of the sheriff’s deed proved non-payment. It is probable that the learned judge would have reached^ the same conclusion from other evidence. It is said that Mr. Woodgate did not set up the Pinckney judgment as a foundation of the sheriff’s sale, or of his title to the land in the suit before the vice-chancellor, when it would have cut off the mortgage to the loan *64 commissioners. It would not be unfair to infer from the omission to set it up, when it would have affected his interest so favorably, that he could not, with truth, do so,- or that the evidence then existed to prove its payment. Mr. Pinckney also gave some evidence tending to show that the judgment was paid. But the judge states that he has found the fact of payment, in part, on the evidence of Cogswell and Warner, and I think we cannot for that reason hold that their evidence was immaterial.
' Upon the ground last mentioned alone, I think that we must order a new trial.
Judgment reversed and new trial ordered, costs to abide the event.
Lott, Ch. Com., having been of counsel, toon no part.